All right. Will the lawyers on Tiverta v. Cummings please approach? And please tell us who you are, who you represent. Good morning, Your Honor. Gregory Petropaski for the plaintiff at police, Sergio Tiverta. And Mark Pashkoski. Good morning, Jason Gehr on behalf of the defendants' appellants, Gil Sumer Lee Corporation and James Cummings. All right. And Mr. Pashkoski, will you be arguing? I will. And how much time would you like? I will take 15 minutes if that's all right. All right. Although my co-counsel will give our background. Okay. And Mr. Gehr? About 15. Judge, could I have a few minutes for rebuttal? Sure. Save a few minutes for rebuttal. Of course. Sure. So as we did before, since we have our 7th grade civics class here and they don't know anything about your case, if you could turn to them and just explain it very briefly. Just tell them what your dispute is about. Good morning, Mark Pashkoski, Greg, Jason Gehr. We have a very interesting case where it's a terrible truck accident with terrible injuries. I won't describe them, but it's an accident that happened in Ohio. And our client was a truck driver, and he had hurt up the truck with terrible consequences. And in lawsuits where the plaintiff, and Mr. Gehr represents the defendants, the driver and the truck company, you will have to file a suit where the accident happened or where the defendant resides. And when it's the company, you have to figure out if the company was running an office, was doing business, and so we filed a suit here in Chicago. And the defense wanted to move it and said that they don't have residents here in Chicago. And that's when the hearing at the trial court, and the trial court ruled that the defendant has residents here, and the case stays. And so the case was appealed by the defendants, and the Supreme Court will now back here for another hearing. And that's what this case is about. Where is it hurting? Is it hurting here in Chicago, or is it hurting in some other residence? All right. Mr. Gehr, tell them a few things from your perspective about the case. Okay. That was a very fair and accurate representation of what we're here on today. Kind of more of a procedural issue, not with regard to who's involved in the accident or the liability of the damages, but more to the case being here in Cook County in the Supreme Court, or should it be somewhere else? My client is the company, and it has offices and locations in other counties in Illinois. It does not have one in Cook County. So that's our position. And I know Mr. Peskovsky disagrees with me on that part over here. We argue our cases and what the justices decide. All right. Okay, Mr. Gehr, whenever you're ready. Good morning again. May it please the Court. The issue before the Court today is whether the personal residence of a single part-time employee of a corporate defendant, Gilstrom Erling, who works out of his home, constitutes an other office under the Illinois venue statute and serves the fixed venue in that county, in Cook County in this case, for the corporate defendant. The circuit court erred in denying the appellant's motion to transfer based solely on those grounds that a personal residence constitutes an other office for Gilstrom. Well, if the corporation had decided to rent a storefront in a strip mall for a part-time employee, same job duties, same setup. I've got a computer provided by the corporation and a telephone line and I answer inquiries from that office. Would there be any doubt that it was an other office for purposes of venue? Under that fact pattern, Your Honor, I don't think so. So what difference does it make that he performs the same functions out of his home? Well, there's a few key ones that's touched on in all the applicable cases. And I think in your example you said if the company rents a storefront, it's their property, whether they're the owner, the leaser, the renter, whatnot. They have ownership interests. They have control over it, the right to control it. It's their office. I think you also mentioned that they've... Let's stop right there. With regard to ownership, where's that in the venue rule? Where does it say it has to be owned? Oh, I don't believe it has to be owned. Okay. So... I believe... It doesn't have to be owned. Okay. Where does it say it has to be rented? I don't believe it says that anywhere in the ruling, Your Honor. Okay. So it could be a location that the employee chooses. I don't know that it could. Why? Why can't an employee who's working for a company, I'm just using a hypothetical, says, well, let's take the appellate court. We happen to all be in this building. As you might know, in different districts, the justices sit wherever they want. They can pick an office. Let's just say, for purposes of this analogy, though, they pick their house. Why couldn't that be the justice's office? His or her home, where the state gives him or her a computer and a phone line, and the judge does work from home in that space, which is, wouldn't that be the judge's office? Take away the word judge. Let's put lawyer. Let's say a lawyer, there are lawyers who work at home. They don't want to spend the money. It's expensive to have a location. So they have a home office. And why wouldn't that be an office? I mean, we're talking about the word office here. Right, right. And a couple points there. And, Your Honor, I was thinking about that analogy this morning, that unfortunately, I spend 12 plus hours a day in my office at my firm. But I also work quite a bit at home, whether morning or night, servicing clients. So you have two offices. But I think that the analogy is the same in the sense that just because I'm doing work at my home, sending emails, making calls for my firm, doesn't establish that that's a firm office. Okay. Let's say, I'll accept that. But our analogy, to make it like this case, is different. In that, there aren't two locations. There's just one. Right. Okay. So if you were a sole practitioner, which you are not, and you only worked out of your house, wouldn't that be your office? I think that could be, Your Honor. But I think that's a different situation. Why? Well, I think in your earlier analogy, when we were talking about judges and lawyers, it And those are the facts that are missing from this present case. Well, wait. I thought that GML provided a computer to Mr. Bolden, right? I believe when he started. Yes. Okay. So he has a computer from the company. And, I mean, it was testimony in the record. Right. And a phone line is what he testified to. Right. Now, the computer, I believe the testimony was, that was in 2011 when he got that. I was no longer there at the time in 2016. He had bought his own and whatnot. The phone line is not a dedicated Gil Sumerili phone line. If you want to call Gil Sumerili for any reason at all, you dial their 1-800 number. It's the same for everybody. It rings in Chester, Illinois, in Randolph County, in our corporate headquarters. And just like every other employee, whether in Chester or one of the other locations, everyone has an extension. In the extension. So I just wanted to, because that is important. So, but the fact that the company gives him an extension at his home, isn't that an extension of the company? Through that line, he's doing, he's working half a week, 24 hours or so, for the company. And they're forwarding calls for company business to wherever he sits. He didn't have to be in his home. He could go and he could rent, like Justice Mason suggested, a storefront. But in this case, it's his home. So what is the difference than the fact that he works out of his home? Well, on the phone issue, I think it's basically forwarded to his cell phone, as opposed to some kind of dedicated landline. But it's still to him at a location. I mean, he's still, the location he's at is his home. That's where he, if the company's going to send him something, where does it, they send it to? In the mail. I would assume to his home address. I assume they send his check to his home address, or they deposit it maybe directly. But if there's any kind of communication from either a customer or from the company, it would be sent to him at his home. Or let's say a fax would be sent to him. Even if it's his home computer, it would be a fax sent to company business to his home. Why wouldn't that indicate that the company has an office at his home? Well, I think it, I guess as a general proposition, we've got to go back to the definition of what another office is. It's been defined over the years. And what everyone, what all the courts agree on is that it's a fixed location that's purposely selected by the company for. Where does it say purposely selected by the company? The definition I have from Illinois in Malir v. Ler, which I'm sure you're familiar with, it says other office includes any fixed place of business in which the affairs of the corporation are conducted in furtherance of a corporate activity. Is that correct? Correct, Your Honor. And then I don't know if you looked at the case itself. It goes on to say it includes any fixed location purposely selected to carry on an activity in furtheration. Okay, it includes, which the including does not make it limited to. It includes, that means that's one. It could also include a home office. I mean, that's the question before us. Does it also include, in that case, that was a hangar where the company had its employees doing business. Okay. Here, so it included, the court stated that one sentence includes the hangar. Here, we are asked to decide, does that sentence include the home office? And, Your Honor, I don't think it does. And I think going through the case you just mentioned, the Luer brothers case with the airplane hangar, I think that while not directly on point in addressing a home office as being an other office, it goes to the factors based on that definition of why that airplane hangar is an office. And some of the important things, they have a telephone number listed as the company. They have a big sign out front that says Luer Brothers. The office park directory has its address and its name. They leased it. They had employees that reported there daily. The airplane that it housed was owned by Luer Brothers. They represented and held out that as an office. And I think the phone number, it's addressed in many of these cases to some extent or another. If there's no company, Mielstrom Realty does not have a number associated with this address or anywhere in Cook County. But my point on the Luer case, the Luer Brothers case, is that I think that's, while not on point, very instructive as to how we evaluate the factors we look at to determine what is, in fact, a home office. As the case points out, it doesn't have to be a traditional office with cubicles and copy machines. It can be a number of different things. But I think that those factors. Okay. He only worked for this one company, and he only dealt with their clients, Aldi being the primary one. And he was a part-time employee, and he was hired specifically to deal with these three clients, these three customers who were in Illinois, one of them in Cook County. So the company could have said, oh, by the way, where are you going to do this stuff? And he could have said, in my RV, at my house, or I'm going to run a storefront. The company didn't put any limit on where he was supposed to do it. They didn't say, you have to do it in a storefront. Oh, and we want to put a big sign up on it, and we want you to have dedicated bags. They paid him to figure out where he was going to do it. And they must have known where he was going to do it because they weren't, as you pointed out, paying for a storefront and a sign and all the other accoutrements of what we would consider a traditional business environment. But he was clearly only working on their behalf from an office in his house, and he was clearly dealing with their clients and only their clients from an office in their house, and he was clearly talking to their corporate people from his office in his house. So from that, it seems to me we can expect that the corporation knew this is where he's conducting business, and they approved of it. So if they approved of it, then even if they didn't like it, they approved of it. And that, it seems to me, does make an extension of the corporate headquarters, an extension of their business, a part of their business in Cook County. And, Your Honor, I think the issue there, and you kind of touched on it, is that this is, his name is James Bolton. He came out of retirement to do this work. He had lived in Cook County for 50 years, and they were looking for, you know, another example would be a road warriors traveling salesman. I mean, they do a lot of their work not in the car or the phone, at their home. They don't have an office. But I think it would be an extreme expansion of the definition to allow people like the traveling salesman, like Mr. Bolton, to fix a venue for a corporate event just because he lived there. Now, if he had lived there, Cook County, for 50 years, this address before he was hired. He had lived there for a long time, but he hadn't worked for the company forever for 50 years. They specifically recruited someone who lived in the area. He happened to live in Cook County, could have lived in DuPage County. But they were specifically looking for someone, and they probably expected that he was going to figure out where he was going to do this work. And if he had come to them with a bill and said, I want to run an office, I don't even know, there's no way for us to tell whether they would have said, good plan, let's do it that way. Instead, they got sort of a deal because he was working from his house. They didn't have to pay rent. They didn't have to pay for a sign. They didn't have to pay for the electricity. But they were paying him a salary from which he presumably paid part of those expenses. They approved that arrangement. And to me, that approval of it, they knew they weren't paying rent on a storefront, so they must have known he was doing this work someplace else, and they approved it. Once they approved it and they said, yep, that's okay with us, then it seems to me that that's an office that they're responsible for. Yeah, I must respectfully disagree with that. Having lived at the address that's now being called an office prior, in conjunction with the evidence that his employment was not and is not contingent on him living in Cook County, he could move tomorrow to a neighboring county and his job would be the same. Which is not to say that if he moved to DuPage, Mr. Mary Lee would not have an office in DuPage. It kind of is a cart before the horse. We're talking about the activities of the corporation in the venue selected by the plaintiff. Right. And I think this is kind of touched on in actually that issue in the Monsanto, the Peterson v. Monsanto case. And that's more of a, it's kind of mashed together. It's more of a doing business analysis, granted. However, they do make the comment, the plaintiff was arguing that Monsanto maintained an employee in Madison County. And the court just touched on it briefly, but basically saying they're not maintaining an employee there, he lives there by personal choice. That's his decision. What's the standard of review? For the denial of a motion to transfer, well, for the factual issues, the findings of fact of a trial court, we would have a manifest way to the evidence. And for the trial court's conclusions of law, it would be a de novo review. Isn't it typically an abuse of discretion on a motion to transfer? An abuse of discretion across. A motion to dismiss on the ground that the corporation isn't doing business or doesn't have an office? Your Honor, my understanding based on, I know there was some confusion in the case law over the years, but my understanding is that the most recent case law says it's kind of a two-step process. There's the factual findings and then the de novo for the conclusions of law. Let me ask you what your definition is of office. My personal? No. I mean, we're not talking personal here. We're talking legal. How are you defining office? Give me a definition. We need to find a definition for office. It's not an ambiguous word. We need to find out how do we define the word office. Should we look in a dictionary? That's okay. I think that's acceptable. I happen to have a dictionary definition here. A place where business is conducted or services performed is an office. So here we have a place where business is conducted. That's the dictionary definition of office. So why doesn't that other offices include Mr. Bolton's office and his house? Well, Your Honor, I think we need to go get a little bit beyond the dictionary definition. I think that's a good start. But we have to look at it in the context of the venue statute and the purpose of the venue statute. Venue is an important privilege, and the law says that we're supposed to construe it liberally to a fact rather than deny a motion to transfer. So when we look at it like that with the definition that we discussed earlier in the Luer Brothers case, I think that kind of gives us a general definition of office. But again, as you point out, Your Honor, I agree that any place you do work, whether it be your car or Starbucks, could be considered an office in that definition. So we need to go into the factors that the case law talks about as to what specifically under the venue statute is relevant and what makes it an office or makes it not an office. And that's where you disagree. And that's where the issue comes. Thank you. Do you want to wrap up and we'll give you some time for rebuttal? Am I out of time? You're getting there. Your Honor, I will leave it at that and reserve for rebuttal. Okay. Thank you. Mr. Petrikowsky. Thank you, Your Honor. Gregory Petrikowsky for Plaintiff Appellee Sergio Taberta. I would like to continue the conversation right where we left off in so doing, skip to my last argument to pick up what Justice Patkinski said and continue those lines of questioning. We heard a term, road warrior, as if to suggest hopping from one Wi-Fi spot to another. I'd like to turn right to the record that the Court relied upon. Mr. Bolton says, I don't actually sell anything unless a new item comes up. I'm just available if they need to talk about something of that nature. Continuing on, he calls himself, I was the local problem solver. I was available in Chicago. I know they hired me because they need someone in Chicago. Well, as we discussed, a purposeful selection of an office is not necessarily required in the way that Miliere says that a traditional office and the traditional semblances of an office and clerical activities are not necessarily required. We have all that here. Having several months after having briefed and issued and returning to it provides great clarity. And as I returned and prepared my remarks here for you today, I noticed that there seemed to be a conflation within the venue statute between the concept of doing business for a purpose of residency and another office. And it seems that the definitions that were employed by defendant and appellant seems to suggest one must be doing business or you can't have an office unless business is done or business is done but for an office. Clearly, the legislature didn't agree with that because there's a separate other office or doing business. So one can be doing a business and one can be at an office not doing business. The Miliere court is the best place to look to understand what is the simple dictionary definition of another office. And the second portion I think is the most important. While it's a fixed place of business, it's also a place that may be a strictly private corporation and may be but need not be a traditional office. And so. Well, what factors should we look at? We need some criteria. I think counsel is right. How do we put meat on this definition? What is it that constitutes an other office? I think it's a place where corporate furtherance happens. So what's that mean? Work is being done on behalf of the employer, which is as in this case what Judge Ehrlich found is that work was being done on behalf of the employer. Your Honor has pointed out the computer terminal. That's actually the only place he can check his GML email. So if he wants to email, if he wants to correspond with clients. Did he get a new computer? I think eventually he did by himself get a computer. But I would take that position even if he bought his own computer and supplied his own computer. Certainly at part-time $50,000 a year, this is a highly paid person. This isn't the road warrior traveling salesman. This is a gentleman with a level of experience in Cook County, which is why he was hired. So he's got his digitally stored communications. That occurs at his location. He can only check his email at his location. What about the telephone? Yeah, I suppose he could take his telephone with him because it is the extension. But in order to set up meetings, he says that that's happening at his office. So if we look at LIRT, it had a sign. Name was there. There's no sign saying that GML is at his home. Sure. Right? Sure. And there's no phone number. I mean, it's on a cell phone, so that's different than what we had in LIRT. So, I mean, there are differences. If we're going to follow LIRT and look at the criteria that they use there to say, well, this is really an office, another office. Sure. What criteria should we be looking at here? Well, I would first look to the lower court that says maybe a strictly private. And so strictly private would seem to be saying if there is no sign, if there is no public entrance, then that could still be an office. You don't need to necessarily have a sign. But you would, I mean, you would take the position, even without a sign, even without any outward manifestation, as long as somebody is in the venue doing the employer's business, that's an office. I would say so. Did he get any, did he get his paycheck at that address? I believe he did. Is that in the record? The record, we had a series of motions to compel. We never got the tax return, so the record is missing, I believe, as to any tax deductions, and the trial court even discussed this. Okay. What is the paycheck? I don't believe that's in the record. I don't believe that was supplied by the defendants, which of course would be construed against the defendants. Actually, on appeal, if there's something not in the record and you didn't get it in the trial court, I don't think you can fault the opposing party for not having that material. Sure. We did attempt to get it, but we can move on because Your Honor is correct. But I think if we wanted to look, going through Mr. Bolton's deposition testimony, I highlighted to myself three categories of deposition testimony for Mr. Bolton. The Cook County and Chicago being purposefully selected, an established Chicago office, and corporate furtherance occurring at this location. Because it's in the deposition and it's in the record, I'd like to discuss it. I will point out that defense counsel never asked Mr. Bolton a single question at his deposition. Instead, waited after and then filed a response after plaintiffs responsibly filed reply brief affidavits directly in contradiction with every single thing that Mr. Bolton had said about his office and undercutting everything. Of course, you can't cross-examine an affidavit. The most important one, I think, was the lawyer for the company to answer a question from the plaintiffs. And so if the affidavit says it has no employees or agents in Cook County, we know that would be an error. There's an objection and then the witness answers. That would not be a true statement based on Mr. Bolton. So right there, they're saying they do have an employee or an agent in Cook County. So that's an admission against them that they have an employee in Cook County. Okay. Now the next question is, does that employee have an office? Correct. Well, and actually, if you go to the deposition transcript of Mr. Bolton, he talks about other Cook County employees that we just were never supplied, don't know about. But, yes, that affidavit was never corrected. But I think that if – But the testimony we can rely on. Sure, the testimony we can rely on. And the testimony says that he has face-to-face meetings with Cook County, and I do know they hired me because they needed somebody in Chicago. Turning to his office, they supplied him with a computer at the time and the phone for convenience. But he says he doesn't sell anything, so we know he's not the road warrior. We know he's checking his digital communications at his home office. We know that if he wants to set a meeting, if he wants to check his communications or his records or anything else that one does to sell groceries in Cook County, he's doing it from his home office. And there's nothing in the record that shows that he was required to be at home. I mean, he could have had a – he wanted to rent it someplace, an office someplace. Certainly. But then I returned to – I told them I would be available for Chicago. Certainly, as Your Honors pointed out previously, that they were on notice that this is where he was. And this is a Cook County guy. He's got 50 years of Cook County experience in the grocery industry. That's why they selected him. His network is here. It is in the record that they were not paying rent for an office. That's correct. It is in the record that they were paying him a pretty good salary for being a part-time employee. Correct. It is in the record that they knew where he was working from. Yes, Your Honor. Because they gave him the – at the beginning they gave him the equipment. Now, this is – especially for young people, back in 2011, everybody didn't have a computer in their pocket. It was a little bit different time. Things have changed. Sure. So – If I may, Mr. Bolton's time hasn't changed. He's still not getting email on his phone. His email is done at his home office. Oh, okay. So if I may just throw that in there, but I didn't mean to cut you off. No, that's good. Please continue. That's even more helpful to me. Thank you. And I still go back to the approval. They knew what he was doing, and they never said, hey, don't do it that way. Sure. Well, I would suggest that they're benefiting from it. Of course, you don't need to – you can lose money and still be in business. But presumably, from the record, we can tell that there's a benefit to him being in Cook County at his office. And they were making money. Yes, Your Honor. Right. Yes, Your Honor. And so I think the last portion that I would like to address would just be the slippery slope argument contained. And some of this will be reiterative, so I'll keep it short. But this is not the story of a traveling salesman or the decline of the office for these modern times. This is a purposefully selected location. This is a location where there is the traditional semblances of an office that would go beyond what's required in Miliere v. Lauer Brothers. And this is a fixed location that we can tell is an office and know is an office that they were on notice of it being an office. And if there are any final questions, I would be happy to answer them. All right. Thank you, Your Honor. Thank you very much. Mr. Guerra, rebuttal. Yes, Your Honor. I do want to – counsel mentioned first there was some conflation between the two aspects of the venue statute, the doing business and the home office. And I think that acknowledges our two separate issues. I think they're both applicable in this case as far as James Bolton is concerned. We haven't talked about the doing business aspect with regard to James Bolton. I think the circuit court correctly found that there was no business being done by Gilston Mary Lee in Cook County. Their sales figures and their business contacts were aligned with Stanbaugh, now on cases. And again, as the setup agrees, Mr. Bolton had one, quote, unquote, customer. He was not a salesman. He was more of a customer service, customer representative. He visited twice, one customer in Cook County. Took him about 5% of his time. Visited twice an hour each a year. And that falls well below many cases where that was found not to be doing business. So there is that issue. It is different, and it's somewhat overlapped. I do want to point out, and, Your Honor, I was thinking about your question earlier, and I've been thinking about it for a few days now, and it's the implications of affirming the circuit court's ruling on the home office would be profound. His reasoning in reading the transcript is essentially if you do work, if you benefit your employer, wherever you're doing that is your office. That's the way I read his opinion. And he also made some comments about tax implications, which there was no evidence of. But the trial court isn't talking about wherever you happen to be doing your employer's business will be deemed your office. He was talking about a particular location where Mr. Bolton typically did whatever it was he did on behalf of his employer. Oh, absolutely, Your Honor. Absolutely. I agree. And I'm thinking in the context of, we talked about it at the Furnace, for example. At our firm, we had the option of working from home exclusively. Now, I'm not disciplined enough to do that, but there are attorneys that do. They don't come in, don't really even have an office. They work from home. It's no different than the work I do late at night. But to affirm this decision that working from home would have massive implications, it's upwards of 25% of workers today telecommute to work, do what Mr. Bolton does in one form or another, work out of their home. That would be a tremendous widening of what an other office constitutes. Maybe that makes perfect sense because our society has changed. Office no longer means a single place. Office means doing work for somebody. And even though the case everybody's relying on is fixed, at the time, things were fixed. Today, as we know, things aren't as fixed. And in the future, it seems more and more, as you say, with your firm. And the words themselves do not designate fixed or unfixed. It says other office. And an office could be sharing space with somebody. I mean, just where you have a location where everything goes into and you get your mail and so forth. Would an office be a post office box? I don't think so. I mean, if Mr. Bolton had a post office box in Cook County, I think we would agree that's not an office. So I think there are things that would not be an office. But if you're doing business at a location, whether it's home or elsewhere or a hangar, it could be an office. It certainly could be. And, again, Your Honor, you make a very good point. But I think that – But you don't agree with it, I understand. Well, it's not that I don't. Because I see what you're saying. However, there's got to be some type of definitive line or at least something we look at. Because otherwise, especially larger companies, could get sued that has salesmen everywhere. Could get sued in any county in any state. And I think the implications of that would be catastrophic and would be contrary to not just the text of the statute, but the intent of the legislature and the way it's been interpreted for years. So I think that's certainly a consideration. In closing, I would just point out that I believe there were some issues with the findings of fact that were against the manifest way of the evidence with regard to the facts leading up to the ultimate conclusion, which I believe was in error, that this office constituted another office under the statute. And for those reasons, I believe that this matter, the trial court's ruling should be reversed. Thank you. Thank you very much. Thank you for your arguments this morning and your briefs. We will take the case under advisement.